## GULF, C. & S. F. RY. CO. v. WEBB.

(Court of Civil Appeals of Texas. Dallas. Feb. 21, 1914. Rehearing Denied March 14, 1914.)

MASTER AND SERVANT (§ 189*)—LIABILITY FOR INJURIES—NEGLIGENCE OF FELLOW SERVANT.

Where a railroad section foreman was assisting the men working under him to place a tie under the rails, they were his fellow servants, and under Laws 1893, c. 91, there could be no recovery for his death caused by the act of one of such men.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Action by Fannie Webb against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. Evans & Carpenter, of Greenville, for appellee.

RAINEY, C. J. Appellee, daughter of John W. Webb, deceased, brought this suit to recover of appellant damages for the death of her father, who received injuries while working as section foreman in appellant's employment, and from which injuries he died. Defendant answered by demurrers, and specially that the deceased and the employé who was using the pick were fellow servants, and that the deceased assumed the risk growing out of the manner and use of the pick by the man who was working under him, that the deceased was in the exclusive control of the other section men, and was responsible for their method and manner of doing the work in hand, and, if there was

negligence in the manner of the service performed, that the deceased was responsible for it as between him and the railway company. A trial resulted in a verdict and judgment for appellee for $1,750, from which this appeal is taken.

By the first assignment complaint is made of the court's refusal to give a special charge asked by appellant, which, in effect, is an instruction to find for the defendant.

The proposition submitted is: "The uncontradicted evidence shows that the deceased was in charge of the work being done at the time and place of accident, and that the other men there engaged, including the one who was using the pick, were working under his direction and control. He was the boss, and they were each responsible to him for the method and manner of doing the work in hand. The deceased was therefore chargeable with anything that might be done by these section men, and the man Weaver, who was using the pick, was, as to the deceased, a fellow servant, for which reason the appellant is not liable herein."

The evidence shows that in 1895, appellee being quite young, her father, John Webb, then in the employ of appellant as section foreman, while assisting two of the section men under his control, he having authority to employ and discharge the section crew, in putting in ties under the rails, was struck with a pick and injured, from which he subsequently died. Howard Webb, a son of the deceased, John E. Webb, and one Weaver were assisting the deceased. The way the work was done, and the way the accident occurred, is shown by the testimony of Howard Webb, about which there is no controversy, and is as follows: "I was present at the time my father received his injury. At that particular time I was putting in ties; the man that struck him and I was putting in a tie; the man's name was Tom Weaver. We were putting in a tie under the rails; we had already taken out one tie, and I was putting back a new one in its place. I was holding the end of the tie up, and Weaver was pulling the tie in with a pick. I was over on the outside of the track, and Mr. Weaver was pulling. Weaver was on this side of the track [indicating]—say the rails run this way [indicating]; Weaver was on this side of the track, pulling the tie this way, and I was on that side of the track, holding the tie up, so it would go under the rail. My father was standing in the center of the track by a jack until the tie got tight under the rail, and then he went to raise on the jack, so it would go under the rail next to where Weaver was pulling. In order to raise on the jack, when he come down on the jack lever he would stoop over. Q. Was or not anything said by him or by Mr. Weaver either just as he went to make this movement with the lever of the jack? A. The tie would not go under the rail next to Mr.

Weaver, and there was a jack setting under that rail, and father said, 'Hold on Tom; I will give you light.' He meant by that he would raise the jack, and raise the rail, and give him sufficient room to pull the tie under the rail. Just about that time Weaver's pick—when he pulled against it, and the tie got tight under the rail, the pick pulled out, and then he [deceased] said, 'Wait a minute and I will give you light,' and straightened up kinder—Weaver did—and just as father come down on the jack, whether it was the first time or the second time I don't know, but, in the motion to come down on the jack lever to pull the track, Weaver made this lick at the tie. Q. How did Weaver strike when he struck the blow that hit your father? A. The pick came over this way [indicating], and naturally would go down with a slant like that [indicating] off of his shoulder, and just as my father went to make the —— to come down on the jack lever he struck. I don't know whether that was the first time my father had come down on the jack lever or the second. The lever was worked up and down this way. It was one of these levers that had handles extended out from · it.· When my father would go down on the lever, it would be necessary for him to go down with his whole body to bring the jack down—going down on the lever would raise the jack. When a foreman was at work out on a section, the instructions were for him to assist his gangs and make a hand. There was no rule in force on the Santa Fé at that time as to whether or not a man in the same situation Weaver was in would have struck while my father was at work."

Under the facts John E. Webb was the vice principal of appellant; but was he a fellow servant with Weaver under the law of 1893 (Laws 1893, c. 91, p. 120) then in force? We think so. The deceased and Weaver were doing the same character of work or service, working together at the same time and place, at the same piece of work, and to the common purpose of placing ties under the rails, which made Weaver a fellow servant with the deceased.

This exact principle is decided in Railway Co. v. Howard, 97 Tex. 513, 80 S. W. 229, wherein it was held that Howard was a vice principal who was killed by the negligence of two employés who were under Howard, and his relatives could not recover of the railway company. It is insisted by appellee that the case of Howard was decided under the act of the Legislature of 1897 (1st Sp. Sess. c. 6), which was not the same as the act of 1893, c. 91, and therefore the principle decided is not the same; there being a certain part of the act of 1893 omitted from the act of 1897.

Justice Brown, in the Howard Case, mentioned this omission, and says in effect that the law as it then stood was the same in ef-

fect as it was before said part was omitted. He further says that Howard was not a fellow servant of Hoherd and Langford, because he had authority over them, but that they were fellow servants with him. Construing the opinion of the Howard Case as we do, we think it in point, and that it settles this case against appellee.

There is no other assignment we consider well taken.

The case has been fully developed, and we see no use in remanding it, so it is reversed and rendered for appellant.

Reversed and rendered.